IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:14-cr-86 |
| v. | ) | |
| | ) | The Honorable Anthony J. Trenga |
| MICHAEL SCHNITTKER, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S DOUBLE JEOPARDY MOTION

During Mr. Schnittker's trial for receipt of child pornography on June 30, 2014, the defense filed a motion to dismiss alleging that the Government violated the Double Jeopardy Clause. Specifically, the defense alleged that the government violated Double Jeopardy by proceeding to trial against Mr. Schnittker for receipt of the same child pornography images and videos he had already pleaded guilty to possessing. The central issue before this Court is whether or not Mr. Schnittker pleaded guilty on April 17th, 2014, to possession of the child pornography on both the Western Digital hard drive and the Maxtor hard drive. See Def. Mot. at 7–8. The record conclusively shows that Mr. Schnittker only pleaded guilty to possession of child pornography on the Western Digital hard drive. Thus, Double Jeopardy did not bar the government from proceeding to trial on receipt of child pornography based on the child pornography on the Maxtor hard drive.

## I.    Factual Background

On March 6, 2014, a federal grand jury returned a two-count Indictment against Mr. Schnittker.  Count 1 of that Indictment charged him with receipt of child pornography and Count 2 charged him with possession of child pornography. The Indictment did not specify precisely what child pornography files were the basis for each count.

In April 2014, defense counsel informed government counsel that Mr. Schnittker intended to plead guilty to possession of child pornography and proceed to trial on receipt of child pornography.  Prior to Mr. Schnittker's guilty plea, government counsel repeatedly informed defense counsel that Count 2 of the Indictment was limited to the Western Digital hard drive.  For example, in an email dated April 15, 2014, government counsel expressly informed defense counsel that Count 2 did not include the child pornography on the Maxtor hard drive.  See Exhibit #1.

As government counsel stated in the original email, "Since you are going forward with receipt, I think the only important thing would be to make it express that the child pornography on the Western Digital hard drive is for the possession count and the child pornography on the Matador [sic] Hard Drive is for the receipt count."  See Exhibit #1.  Defense counsel responded, seeking clarification on exactly which images and videos of child pornography were on the Western Digital and which were on the Maxtor.  See Exhibit #1.

Government counsel then sent an email that included four spreadsheets.  The four spreadsheets included: a list of the child pornography images on the Maxtor, a

list of the child pornography videos on the Maxtor, a list of the child pornography images on the Western Digital, and a list of the child pornography videos on the Western Digital.  <u>See</u> Exhibit #2.[1]  In the email, government counsel expressly stated, "At trial, I could use any of the child pornography from the Maxtor hard drive to support the receipt count."  <u>See</u> Exhibit #1.  Again, Mr. Schnittker's counsel was informed – this time in greater detail – exactly which child pornography files he would be pleading guilty to possessing and which ones he would not be pleading guilty to possessing.[2]

During the plea colloquy on April 17, 2014, Government counsel expressly delineated what child pornography supported the possession count.  Counsel stated, "Just one point for the record, the plea is to Count 2, which is possession. Count 1 is for receipt of child pornography. Just to state for the record, there are two external hard drives. They both contain child pornography in this case. The Western Digital hard drive is the -- I'm sorry. The possession count is for the Western Digital hard drive and the child pornography on that. The other hard drive is a Maxtor hard drive. The child pornography on that goes to the receipt count and won't be the subject of the plea today."  <u>See</u> Exhibit #3 at 2-3.

---

[1] Exhibit #2 contains the four spreadsheets.  Defense counsel has previously been provided a copy of these spreadsheets, and the government will deliver a courtesy copy to chambers.

[2] In addition to the emails in Exhibit #1, government counsel had several phone calls with defense counsel, both before and after Mr. Schnittker's guilty plea, in which government counsel again repeated that Mr. Schnittker would only be pleading guilty to possession of the child pornography on the Western Digital hard drive, not the Maxtor.  In these phone calls, government counsel explained that the reason for this was to avoid any Double Jeopardy concerns.

The Court then asked whether the second hard drive, i.e., the Maxtor hard drive, would be the only hard drive the government would rely on for the receipt charge.  Government counsel responded, "yes," indicating that the government would only rely on the Maxtor hard drive to support the receipt count.  Id. at 3.  The factual basis for the guilty plea focused exclusively on the Western Digital hard drive.  Id. at 15-17.

The record following the guilty plea confirms that Mr. Schnittker only pleaded guilty to possession of the child pornography on the Western Digital hard drive.  For example, on April 28, 2014, the government filed a motion and 404(b) notice, which the defense never opposed, stating that it intended to use Mr. Schnittker's plea to possession of the child pornography on the Western Digital hard drive as evidence that he knowingly received the child pornography on the Maxtor hard drive.  See Docket #41.  On June 26, 2014, the government filed its trial brief in which it again stated that Mr. Schnittker had "plead guilty to possessing child pornography on the Western Digital MyBook External hard drive, and he is proceeding to trial on the charge of receipt of child pornography on the Maxtor External hard drive."  See Docket #51 at 1.

In addition, at trial the government clearly focused on proving that Mr. Schnittker knowingly received the child pornography on the Maxtor hard drive.  See, e.g., Trial Exhibits #33–34, 39–42; Docket #59, Trial Transcript at 6:3–14 (opening statement), 127:1–128:22 and 130:17–134:7 (closing argument).

## II.   The Defense Motion Is Untimely

Local Rule of Federal Criminal Procedure 12 holds that, "Within eleven days from the date of arraignment, or such other time as may be fixed by the Court, the parties shall file all desired motions." The motions that must be filed within that time frame include all motions "raising any other matter capable of being raised by a pretrial motion."

The defense's Double Jeopardy motion was filed during trial, at the close of the government's case-in-chief. The motion is untimely. Moreover, the defense had adequate notice of the possibility of raising this motion and delayed only in an attempt to prejudice the government. For these reasons, the motion should be denied as untimely.

The defense attempts to avoid this straight-forward application of the Local Rule by citing to United States v. Jarvis, 7 F.3d 404 (4th Cir. 1993). That case holds that under Federal Rule of Criminal Procedure 12(b), a Double Jeopardy motion "may" be raised pre-trial. Jarvis, 7 F.3d at 409. Fed. Rule 12(b) distinguishes between certain motions which must be raised before trial and motions which "the defendant at his option may raise by motion before trial . . . ." Id. Under Jarvis and Fed. Rule 12(b), the defense would be permitted to file the Double Jeopardy motion during trial.

The Local Rule is different. It requires that all motions that are capable of being filed pretrial "shall" be filed within eleven days of arraignment. This District has chosen to enact a Local Rule that is more restrictive than Fed. Rule 12(b), and

the defense has no valid reason for not following that Rule.  Under Local Rule 12, the motion is untimely and should be dismissed.

## III.   The Double Jeopardy Clause

### A. Double Jeopardy Does Not Prohibit Convicting A Defendant Of Both Possession and Receipt of Child Pornography If Each Count Is Based On Different Images

The Double Jeopardy clause protects "any person [from] be[ing] subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy clause protects persons "against successive prosecutions for the same offense after acquittal or conviction and," as relevant here, "against multiple criminal punishments for the same offense." Monge v. California, 524 U.S. 721, 727–28 (1998).

In Blockburger, the Supreme Court held that if "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932).  Two different statutes define the "same offense" if one is a lesser-included offense of the other.  See Rutledge v. United States, 517 U.S. 292, at 297 (1996); Ball v. United States, 470 U.S. 856 (1985) (concluding that multiple convictions were barred because statutes directed at "receipt" and "possession" of the same firearm amounted to the "same offense," in that proof of receipt "necessarily" included proof of possession); Brown v. Ohio, 432 U.S. 161, 167–68, (1977) (in multiple proceedings context, applying Blockburger to confirm state-court conclusion that offense of "joyriding" was a lesser included offense of auto theft).

The Circuit Courts that have addressed this issue have concluded that possession of child pornography is a lesser-include offense of receipt of child pornography. See, e.g., United States v. Brown, 701 F.3d, 120, 125 n.6 (4th Cir. 2012) (not deciding the issue, but noting that other Circuits that have decided the issue have concluded possession is a lesser included); United States v. Dudeck, 657 F.3d 424 (6th Cir.2011) (collecting cases). As a result, a defendant cannot be convicted for both possessing and receiving the same child pornography image[3] without violating Double Jeopardy's prohibition on multiple punishments for the same offense. See, e.g., United States v. Schales, 546 F.3d 965, 978 (9th Cir.2008); United States v. Kuchinski, 469 F.3d 853, 859 (9th Cir.2006) ("If ... the [receipt and possession of child pornography] counts were based on the same acts, entering judgment on both of the offenses would be improper.").

However, a defendant can be convicted for both possession and receipt of child pornography if each count is based on separate images. See, e.g., United States v. Bobb, 577 F.3d 1366, 1375 (11th Cir. 2009); United States v. Halliday, 672 F.3d 462, 470-471 (7th Cir. 2012) ("Where separate images form the bases for separate receipt and possession counts, there can be no double jeopardy violation."); United States v. Irving, 554 F.3d 64, 77–79 (2d Cir.2009) (finding that no double jeopardy violation would exist where the possession count was based on an image that did not form the basis of the receipt conviction); United States v. Overton, 573

---

[3] This is not the case if the possession involved a separate act from receiving the images, such as copying the image to a different piece of computer media. See infra Part IV.

F.3d 679 (9th Cir. 2009) (determining whether a conviction for both receipt and possession of child pornography offends the Fifth Amendment's protection against Double Jeopardy depends on whether the "conduct underlying both offenses is the same."); United States v. Grummer, 474 Fed. Appx. 667 (9th Cir. 2009) (unpublished) ("[W]here separate conduct supports each offense, the Fifth Amendment's Double Jeopardy clause is not implicated.").

For example, in Overton, the Ninth Circuit held that the defendant's conviction for both receipt and possession of child pornography was based on separate images. Id. ("In the instant case, there is no double jeopardy violation and the district court properly denied his motion to dismiss with respect to these counts because Overton was not twice punished for the same conduct.").

This analysis is not altered by the fact that Mr. Schnittker pleaded guilty to possession of child pornography and chose to proceed to trial on the charge of receipt of child pornography. The Supreme Court has held that pleading guilty to a lesser-included offense does not create a Double Jeopardy issue with respect to the remaining charges. See Ohio v. Johnson, 467 U.S. 493 (1984) ("No interest of respondent protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. Here respondent offered only to resolve part of the charges against him, while the State objected to disposing of any of the counts against respondent without a trial.").

Here, Mr. Schnittker's plea to possession of child pornography is not a bar to his conviction on receipt of child pornography so long as each conviction is based on separate child pornography files.

## B. Analysis Of The Entire Record Of The Proceedings Shows Mr. Schnittker's Guilty Plea Was Limited To The Western Digital Hard Drive

Courts look to the record as a whole to determine whether or not two charges are based on the same facts. See United States v. Olmeda, 461 F.3d 271, 282 (2nd Cir. 2006) ("To determine whether two offenses charged in successive prosecutions are the same in fact, a court must ascertain whether a reasonable person familiar with the totality of the facts and circumstances would construe the initial indictment, at the time jeopardy attached in the first case, to cover the offense that is charged in the subsequent prosecution."); United States v. Stefanidakis, 678 F.3d 96, 100 (1st Cir. 2012) ("Our inquiry into the bona fides of a double jeopardy argument reduces to whether the alleged double jeopardy violation is evident on the face of the record."); Def. Mem. at 7–8. The inquiry is an objective one. See Olmeda, 461 F.3d at 282 ("Thus, where a defendant pleads guilty to an initial indictment, it is not enough for him to assert that he subjectively believed that his allocution covered conduct charged in a subsequent prosecution. A court must further determine that such a conclusion would be reached by an objective arbiter.").

In certain cases, it may be relatively simple to determine objectively the factual identity of different charges. See, e.g., United States v. Asher, 96 F.3d 270, 273 (7th Cir.1996) ("[I]t is simple enough to determine if a defendant is being prosecuted twice for the same murder or for two different murders."). "But where

the parameters of a charged crime are unclear, as in the case of an ambiguously worded indictment, the inquiry can be more complicated." <u>See</u> <u>Olmeda</u>, 461 F.3d at 282.

As a result, Courts do not limit the inquiry to the language of the Indictment. <u>See</u> <u>Olmeda</u>, 461 F.3d at 282. The analysis will include the language of the Indictment as well as "the entire record of the proceedings." <u>See</u> <u>Olmeda</u>, 461 F.3d at 282, <u>citing</u> 1 Charles Alan Wright, Federal Practice and Procedure § 125 (3d ed.1999); <u>United States v. Walsh</u>, 194 F.3d 37, 45 (2d Cir.1999) (reviewing challenged indictment in context); <u>Stefanidakis</u>, 678 F.3d 96, 100 ("To carry out this task, we must look to whether the record contains facts sufficient to supply a rational basis for a finding that the possession and transportation [of child pornography] counts were predicated on different conduct."); <u>United States v. Mackins</u>, 315 F.3d 399, 410-411 (4th Cir. 2003) (for a Double Jeopardy analysis in the conspiracy context, looking solely at the language of the Indictment was frivolous).

In addition to the language of the Indictment, Courts have looked to any "understanding between the parties," the plea colloquy, statements of the prosecutor, such as a bill of particulars or opening statements, and the evidence presented at trial. <u>See</u> <u>Olmeda</u>, 461 F.3d at 282, 286 n.14 (Court considered "any evidence in the record reflecting an understanding between the parties as to the scope of the North Carolina charge to which [the defendant] agreed to plead guilty."); <u>Stefanidakis</u>, 678 F.3d 96, 100 (looking to indictment and plea colloquy); <u>Halliday</u>, 672 F.3d at 470-471 (looking to opening statements); <u>United States v.</u>

Overton, 573 F.3d 696-697 (although indictment was facially ambiguous, Court's findings of fact in a bench trial conclusively showed that separate child pornography supported receipt and possession counts); United States v. Mason, 532 Fed.Appx. 432, 437 (unpublished) (4th Cir. 2013) (finding no Double Jeopardy violation because "the prosecutor's statements and the evidence at trial indicate that the possession and receipt charges were predicated on distinct conduct"); Mackins, 315 F.3d 399, 410-411 (4th Cir. 2003) (Court looked to trial transcript of first trial to determine the specific conduct to which jeopardy attached); Grummer, 474 Fed. Appx. 667 (9th Cir. 2009) (unpublished) ("Trial testimony" used to establish that separate conduct supported possession and receipt counts.); United States v. Woods, 684 F.3d 1045, 1061 (11th Cir. 2012) (bill of particulars established that separate evidence supported possession and receipt of child pornography counts).

For example, in Stefanidakis, the defendant was prosecuted for both possession and transportation of child pornography. Stefanidakis, 678 F.3d 96, 100 The First Circuit held that his convictions on both charges did not violate Double Jeopardy because each charge was based on different child pornography files. Id. In making its determination that separate conduct supported each offense, the Court looked to both the Indictment and the plea colloquy. Id.; see also Olmeda, 461 F.3d 271, 286 (Court found Double Jeopardy violation in part because the plea colloquy was silent as to whether or not it included the ammunition that formed the basis of the second prosecution). Similarly, in Halliday, the Indictment did not expressly state which child pornography supported the possession and receipt

counts. See Halliday, 672 F.3d at 470-471. However, during opening argument in the trial on both charges, the prosecutor delineated which images supported which charge, thereby negating any Double Jeopardy concerns. Id. at 470–471.

Against this legal background, the question for the Court is whether or not an objective reading of the record as a whole would indicate that Mr. Schnittker pleaded guilty to possessing the child pornography on the Maxtor hard drive. The defense argues that at the time Mr. Schnittker pleaded guilty to possession of child pornography, he had a reasonable belief that he was pleading guilty to all of the child pornography on both the Maxtor hard drive and the Western Digital hard drive. See Def. Mot. at 8 ("Thus a reasonable person familiar with the circumstances would have interpreted Count 2 of the indictment to refer to all of the pornography."). By any measure, this statement is objectively false.

A review of the record conclusively shows that Mr. Schnittker did not plead guilty to possession of the child pornography on the Maxtor. The emails between the parties on April 15th show that the defense was informed as to exactly which child pornography files would and would not be the subject of the possession plea. See Exhibit #1; Woods, 684 F.3d at 1061 (The government provided the defense with a list of the specific files it intended to rely on to prove each count, thereby avoiding any concern that the Indictment was multiplicitous.)

In addition, during the plea colloquy, government counsel expressly stated that the possession plea did not include the Maxtor hard drive. See Exhibit #2; United States v. Bowman, 523 Fed.Appx. 767, 768 (2nd Cir. 2013) (unpublished)

(During a guilty plea for both possession and receipt of child pornography, the government expressly delineated that certain child pornography files supported the receipt count and others supported the possession count.). As a result, the record conclusively shows that jeopardy did not attach to the images and videos on the Maxtor until the presentation of evidence at the bench trial on June 30th, 2014.

## IV.   Duplicates

At argument on this motion during trial and in the defense motion on guilt, see Docket #60, the defense makes various arguments suggesting Double Jeopardy prohibits using duplicate child pornography images and videos from the Maxtor and Western Digital hard drives to support both a receipt and possession charge. That argument lacks merit both in law and in fact.

First, as a legal matter, duplicate child pornography files can support a receipt and possession count in some cases. As discussed previously, receipt and possession counts can be based on separate child pornography images. See United States v. Dudeck, 657 F.3d 424, 430-431 (6th Cir. 2011). In addition, receipt and possession counts can be based on the same child pornography images where the defendant engaged in "different conduct" to support each charge. Id. For example, different conduct might arise where a defendant knowingly downloads a child pornography images and then subsequently transfers that images to a different computer medium. Id.; United States v. Schales, 546 F.3d 965, 980 (9th Cir. 2008).

As the Ninth Circuit held in Schales, "If the government wishes to charge a defendant with both receipt and possession of material involving the sexual exploitation of minors based on separate conduct, it must distinctly set forth each

medium forming the basis of the separate counts. For example, we note that there would have been no double jeopardy violation if the government had distinctly charged Schales with both receipt of material involving the sexual exploitation of minors for the images that he downloaded from the internet and with possession of material involving the sexual exploitation of minors for the images that he transferred to and stored on compact discs." Schales, 546 F.3d at 980.

Here, the search terms on eMule (along with other evidence) show that Mr. Schnittker knowingly downloaded child pornography, conduct which supports a receipt count. In addition, Mr. Schnittker also saved child pornography on the Western Digital in a highly detailed folder structure. This second act of saving and categorizing the child pornography on the Western Digital constitutes different conduct which supports a possession count. Under Schales, this is so even if the child pornography images themselves were identical.

Second, as a factual matter, the trial testimony established that the Maxtor contained numerous child pornography images and videos that were not duplicates. See Docket #59, Trial Transcript at 93:16–94:1. In addition, a comparison of the spreadsheets in Exhibit #2 show exactly which files were and were not on both the Maxtor and Western Digital hard drives. For example, of the 75 child pornography videos on the Maxtor, see Trial Exhibit #27, #33, none of these videos were also on the Western Digital hard drive. See Exhibit #2. Notably, the four child pornography videos referenced in Government's Demonstrative Exhibits #39–42 were only recovered from the Maxtor hard drive. They were not duplicates.

As none of the child pornography videos on the Maxtor hard drive were also on the Western Digital hard drive, Mr. Schnittker has no claim that he pleaded guilty to possessing them, and they can properly form the basis for a conviction of receipt of child pornography.

## V.     The Defense Argument

The defense argument is entirely premised on the factual assumption that the government never stated which child pornography images and videos supported which count.  In order for this Court to entertain the defense's argument, it would first have to find that at the time Mr. Schnittker pleaded guilty, a reasonable person in his position would have believed he was pleading guilty to possessing the child pornography images and videos on both hard drives.  As discussed <u>supra</u> Part I, that is not the case.  However, to provide a complete understanding of the operative legal framework, the government will summarize the defense's argument.

The government could have gone to trial on the original indictment without specifying pre-trial or during trial which evidence would be used to prove each count.  <u>See, e.g.</u>, <u>United States v. Overton</u>, 573 F.3d 679 (9th Cir. 2009) ("[T]he Government can indict and prosecute a defendant for both receipt and possession of child pornography . . . .").  In that scenario, if nothing in the record or the Indictment specified which child pornography images support each charge, then Double Jeopardy would prohibit a Court from entering judgment on both counts. <u>Overton</u>, 573 F.3d 679 ("[E]ntering judgment of conviction for both is multiplicitous and constitutionally impermissible when based on the same conduct."); <u>Ball v. United States</u>, 470 U.S. 856, 865 (1985) ("When a defendant has been convicted of

multiplicitous offenses—in this case, a greater and a lesser-included offense—the trial court shall enter judgment on only one of the statutory offenses.")

In that scenario, the Court must strike the lesser-included offense. See, e.g., United States v. Brown, 701 F.3d 120, 128 (4th Cir. 2012). For example, in Brown the defendant was found guilty by jury of both receipt and possession of the same images of child pornography. Id. Under Double Jeopardy, the district court struck the possession count, which is the lesser-included count. In doing so, it denied the defendant's motion to dismiss the receipt count. Id.

The Fourth Circuit affirmed, holding that, "the court did not abuse its discretion by denying Brown's motion and striking the lesser-included offense of possession of child pornography; on the contrary, the court properly adhered to a long line of authorities directing vacation of the conviction that carries the more lenient penalty when a defendant is convicted of both a greater and a lesser-included offense." Id.; see also, United States v. Luskin, 926 F.2d 372, 378 (4th Cir.1991) ("The better practice [when a defendant is convicted of a greater and a lesser-included offense] would be for the trial judge to strike the conviction on the lesser included offense[.]"); United States v. Snyder, 766 F.2d 167, 171 (4th Cir. 1985) (recognizing that, where a defendant is convicted of both a greater and a lesser-included offense, "the proper remedy is to vacate both the conviction and the sentence on the included offense, leaving the conviction and the sentence on the greater offense intact" (internal quotation marks omitted)); United States v. Martorano, 697 F.3d 216, 220 (3d Cir. 2012) (explaining that, when faced with

convictions on both greater and lesser-included offenses, to vacate the greater

offense "would be inconsistent with the very concept of a lesser included offense"

(internal quotation marks omitted)); United States v. Dudeck, 657 F.3d 424, 431

(6th Cir. 2011) ("If it cannot be determined that separate and distinct conduct

occurred for each offense . . . the district court shall vacate [the lesser offense]").

That analysis is not changed when the defendant pleads guilty to the lesser-

included offense but persists in a trial on the greater offense. Johnson, 467 U.S.

493; Lacy, 446 F.3d at 456. For example, if nothing in the record or the Indictment

specifies which child pornography files support each charge, and the defendant

pleads guilty to possession of child pornography, then jeopardy would attach to all

of the child pornography. In that scenario, the government would still be permitted

to proceed to trial on the receipt charge. If convicted at trial of receipt, then the

Court would dismiss the possession charge as a violation of Double Jeopardy.

For example, if an objective review of the record showed that Mr. Schnittker

pleaded guilty to possession of both the Western Digital and Maxtor hard drives,

then jeopardy would have attached to the Maxtor at the time of the guilty plea.

Even so, the government could have proceeded to trial on the receipt charge. Under

Johnson, 467 U.S. 493, if Mr. Schnittker was then convicted of receipt of child

pornography on the Maxtor hard drive — after he had, hypothetically, already

pleaded guilty to possession of the child pornography on that drive — the Court

would have been required to dismiss the possession charge as a violation of Double

Jeopardy.

The defense argues that the Superseding Indictment in this case changed this analysis because it amounted to a subsequent prosecution. Def. Mem. at 5–6. The legal basis for the defense's argument is not clear. The government agrees that the Supreme Court has held that the government cannot bring a subsequent prosecution for a greater offense once a defendant has been acquitted or convicted of a lesser-included offense. See Ohio v. Johnson, 467 U.S. 493 (1984); United States v. Lacy, 446 F.3d 448, 455-456 (3rd Cir. 2006). However, the Supreme Court has also held that the Double Jeopardy clause does not bar the government from "continuing a prosecution on greater offenses in the same proceeding in which the defendant had pleaded guilty to lesser included offenses charged in a single indictment." Johnson, 467 U.S. 493; Lacy, 446 F.3d at 456.

Whether a superseding indictment constitutes a permissible continuation of the same proceedings or an impermissible subsequent prosecution turns on the facts of the specific case. Compare United States v. McIntosh, 580 F.3d 1222, 1228 (11th Cir. 2009) (superseding indictment violated Double Jeopardy) with United States v. Quinones, 906 F.2d 924, 928 (2nd Cir. 1990) (superseding indictment did not violate Double Jeopardy).

Nothing in the record of this case suggests that the government was attempting to impermissibly prosecute Mr. Schnittker for the same conduct twice. Rather, but for an incidental change to the date range of the receipt count, the posture of this case falls squarely within Johnson. As such, even if jeopardy had

attached to the Maxtor at the plea hearing, the government should be allowed to continue to trial on the receipt count.

However, the Court need not resolve this issue. The factual predicate for the defense's argument is false: Mr. Schnittker's guilty plea did not encompass the child pornography on the Maxtor hard drive. Therefore he can be properly convicted of receipt of the images on that hard drive without offending Double Jeopardy.

## VI.    Conclusion

Based on the record before the Court, jeopardy did not attach to the child pornography on the Maxtor hard drive during Mr. Schnittker's guilty plea. Therefore, his Double Jeopardy motion should be denied.


Date: July 11, 2014                 Respectfully submitted,

                                    Dana J. Boente
                                    United States Attorney

                            By: _____/s/_____
                                    Matt Gardner
                                    Assistant United States Attorney
                                    Ryan Dickey
                                    Eastern District of Virginia
                                    *Counsel for the United States*
                                    2100 Jamieson Avenue
                                    Alexandria, VA 22314
                                    Phone: (703) 299-3700
                                    Fax: (703) 299-3980
                                    Email: ryan.dickey@usdoj.gov
                                    Email: matthew.gardner@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filling (NEF), and I have also served by email a copy of the foregoing to the following:

John Zwerling, Esq.
Cary Citronberg, Esq.
Law Offices of John Zwerling, P.C.
114 North Alfred Street
Alexandria, VA 22314
jz@zwerling.com
cary@zwerling.com


Dana J. Boente
United States Attorney


By: _____/s/_____
Matt Gardner
Assistant United States Attorney
Ryan Dickey
Assistant United States Attorney
Eastern District of Virginia
*Counsel for the United States*
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: ryan.dickey@usdoj.gov
Email: matthew.gardner@usdoj.gov

Date: <u>July 11, 2014</u>

# Exhibit #1

**Gardner, Matthew (USAVAE)**

| | |
|---|---|
| **From:** | Gardner, Matthew (USAVAE) |
| **Sent:** | Tuesday, April 15, 2014 12:19 PM |
| **To:** | 'Cary Citronberg'; 'John Zwerling' |
| **Subject:** | RE: Schnittker |
| **Attachments:** | List of Maxtor CP Images.xls.xlsx; List of Maxtor Movies.xls.xlsx; List of WD MyBook CP Images.xlsx; List of WD MyBook Movies.xlsx |

Cary,

Please refer to the attached spreadsheets.  These are of course only partial lists.  These are only the lists of child pornography files that the forensic expert reviewed.  At trial, I could use any of the child pornography from the Maxtor hard drive to support the receipt count.

If you would like another opportunity to review the actual child pornography, please let me know, and we can set up a time to do so in my office.

Thanks,
Matt

---

**From:** Cary Citronberg [mailto:cary@zwerling.com]
**Sent:** Tuesday, April 15, 2014 11:23 AM
**To:** Gardner, Matthew (USAVAE); 'John Zwerling'
**Subject:** RE: Schnittker

Matt,

Which is the pornography on the Matador vs. the Western Digital?

Thanks,

**Cary Citronberg**

## LAW OFFICES OF JOHN KENNETH ZWERLING, P.C.

114 North Alfred Street

Alexandria, VA 22314

E-mail: cary@zwerling.com

Telephone: 703-684-8000

Fax: 703-684-9700

Website: www.zwerling.com

**CONFIDENTIALLY NOTICE – CLIENT PRIVILEGED**: This e-mail transmission, and any documents, files, or previous e-mail messages attached to it may contain confidential information that is legally privileged. **DO NOT READ THIS E-MAIL IF YOU ARE NOT THE INTENDED RECIPIENT**. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify us by reply e-mail or by telephone at 703-684-8000 and destroy the original transmission from your hard drive and servers and its attachments without reading or saving in any manner. E-mail cannot be guaranteed to be secure, error free or free from viruses. **THE LAW OFFICES OF JOHN KENNETH ZWERLING, P.C.** does not accept any liability whatsoever for any loss or damage which may be caused as a result of the transmission of the message by e-mail. If verification is required, please request a hard copy version. Thank you.

<hr< U1:ADDRESS=""> size=2 width="100%" align=center tabindex=-1>
**From:** Gardner, Matthew (USAVAE) [mailto:Matthew.Gardner@usdoj.gov]
**Sent:** Tuesday, April 15, 2014 7:54 AM
**To:** John Zwerling (jz@zwerling.com); cary@zwerling.com
**Subject:** Schnittker

John and Cary,

I got your message.  Sorry for the delay, I was out yesterday afternoon for a doctor's appointment for my son.  I will be around most of the day to discuss the statement of facts.  Since you are going forward with receipt, I think the only important thing would be to make it express that the child pornography on the Western Digital hard drive is for the possession count and the child pornography on the Matador Hard Drive is for the receipt count.  Otherwise, I am fairly open about the statement of facts.

Thanks,
Matt


No virus found in this message.
Checked by AVG - www.avg.com
Version: 2013.0.3466 / Virus Database: 3722/7344 - Release Date: 04/14/14

# Exhibit #2
# [DVD Filed Separately]

# Exhibit #3

1

```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
2                         ALEXANDRIA DIVISION

3   UNITED STATES OF AMERICA,    )   Case 1:14-cr-00086
                                 )
4                  Plaintiff,    )
                                 )
5        v.                      )   Alexandria, Virginia
                                 )   April 17, 2014
6   MICHAEL SCHNITTKER,          )   9:30 a.m.
                                 )
7                  Defendant.    )
    _____)   Pages 1 - 23
8

9            TRANSCRIPT OF CHANGE OF PLEA HEARING

10        BEFORE THE HONORABLE ANTHONY J. TRENGA

11           UNITED STATES DISTRICT COURT JUDGE

12
    APPEARANCES:
13
    FOR THE PLAINTIFF:
14
         MATTHEW J. GARDNER, ESQUIRE
15       OFFICE OF THE UNITED STATES ATTORNEY
         2100 Jamieson Avenue
16       Alexandria, Virginia  22314
         (703) 299-3700
17
    FOR THE DEFENDANT:
18
         JOHN K. ZWERLING, ESQUIRE
19       CARY J. CITRONBERG, ESQUIRE
         ZWERLING, LEIBIG & MOSELEY, PC
20       114 North Alfred Street
         Alexandria, Virginia  22314
21       (703) 684-8000

22  THE DEFENDANT, MICHAEL SCHNITTKER, IN PERSON

23

24

25       COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

Rhonda  F.  Montgomery    OCR-USDC/EDVA    (703)  299-4599

1          THE CLERK:   Criminal Case 1:14-cr-86, *United*

2  *States of America v. Michael Schnittker.*

3          Will counsel please identify themselves for

4  the record.

5          MR. GARDNER:   Good morning, Your Honor.   Matt

6  Gardner for the United States.

7          THE COURT:   Good morning, Mr. Gardner.

8          MR. ZWERLING:   Good morning, Your Honor.

9  John Zwerling and Cary Citronberg for Mr. Schnittker.

10          THE COURT:   Good morning.

11          I understand we're here for a plea as to one

12  count but the case would continue as to the other.   Is

13  that correct?

14          MR. ZWERLING:   Yes, Your Honor.   And we have

15  a jury waiver.

16          THE COURT:   All right.   Mr. Gardner, the

17  government hasn't been able to resolve this on the

18  basis of this plea?

19          MR. GARDNER:   No.   That's correct, Your

20  Honor.

21          Just one point for the record, the plea is to

22  Count 2, which is possession.   Count 1 is for receipt

23  of child pornography.   Just to state for the record,

24  there are two external hard drives.   They both contain

25  child pornography in this case.   The Western Digital

1  hard drive is the -- I'm sorry.  The possession count

2  is for the Western Digital hard drive and the child

3  pornography on that.  The other hard drive is a Maxtor

4  hard drive.  The child pornography on that goes to the

5  receipt count and won't be the subject of the plea

6  today.

7          THE COURT:  All right.  Is the second hard

8  drive the only hard drive the government is relying on

9  for the purposes of the receipt charge?

10         MR. GARDNER:  Yes.

11         THE COURT:  All right.  Mr. Schnittker, would

12 you come to the podium, please, and be sworn.

13     (The defendant affirms.)

14         THE COURT:  Would you state your full name,

15 please.

16         THE DEFENDANT:  Michael Frederick (phonetic)

17 Schnittker.

18         THE COURT:  Mr. Schnittker, the purpose of

19 this hearing is to give you the opportunity to enter a

20 plea of guilty to the charge in Count 2 of the

21 indictment, which alleges possession of child

22 pornography.  If you enter such a plea, it will be the

23 responsibility of this Court to ensure that your plea

24 is entered voluntarily, that is that no one is forcing

25 you to enter that guilty plea or that the guilty plea

1  is induced by any promises or understandings other than

2  those that may be contained in a formal written plea

3  agreement.

4         The Court will also need to determine whether

5  your plea is entered knowingly, that is that you

6  understand the consequences of pleading guilty.  In

7  order for the Court to make those determinations, I

8  will ask you a series of questions.  For that purpose,

9  you've been placed under oath.  Having been placed

10 under oath, you have the obligation to answer all of

11 the Court's questions truthfully.  If any of your

12 answers prove to be untrue, you may be subjecting

13 yourself to additional criminal penalties.

14         Do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  What is your age?

17         THE DEFENDANT:  Fifty-nine.

18         THE COURT:  And what is your level of formal

19 education?

20         THE DEFENDANT:  A bachelor of science in

21 engineering.

22         THE COURT:  And you're a citizen of the

23 United States?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  You've been represented by a

```
 1  lawyer in connection with these charges?
 2              THE DEFENDANT:  Yes, Your Honor.
 3              THE COURT:  You've met with your lawyer?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  Has your lawyer explained to you
 6  the nature of the charge to which you would plead
 7  guilty and what the government must prove in order to
 8  convict you of that charge?
 9              THE DEFENDANT:  Yes, Your Honor.
10              THE COURT:  Have you shared with your lawyer
11  all the facts and information you have pertaining to
12  this charge?
13              THE DEFENDANT:  Yes, Your Honor.
14              THE COURT:  Has your lawyer explained to you
15  the consequences of pleading guilty?
16              MR. ZWERLING:  Yes, Your Honor.
17              THE COURT:  Have you understood everything
18  your lawyer has told you?
19              THE DEFENDANT:  Yes, Your Honor.
20              THE COURT:  Have you had any difficulty
21  understanding anything your lawyer has told you,
22  anything about this charge against you, or anything
23  about these proceedings, including why you're in court
24  here today?
25              THE DEFENDANT:  No, Your Honor.
```

6

1          THE COURT:  Do you think you've had enough
2   time to meet with your lawyer and discuss whether or
3   not you should be entering a guilty plea at this point?
4          THE DEFENDANT:  Yes, I have.
5          THE COURT:  Have you been satisfied with the
6   services of your lawyer?
7          THE DEFENDANT:  Yes, I have.
8          THE COURT:  Have you been under the influence
9   of any drug or medication or any other substance that's
10  affected your ability to understand anything your
11  lawyer has told you or anything about these charges or
12  anything about these proceedings?
13         THE DEFENDANT:  No, Your Honor.
14         THE COURT:  Mr. Zwerling, based on everything
15  you know, is Mr. Schnittker competent to enter a guilty
16  plea here today?
17         MR. ZWERLING:  Yes, he is, Your Honor.
18         THE COURT:  Has your counsel explained to you
19  the maximum punishment you could receive based on the
20  conviction that would result from your guilty plea?
21         THE DEFENDANT:  Yes, Your Honor.
22         THE COURT:  Do you understand that the charge
23  to which you would plead guilty is possession of child
24  pornography?
25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And do you understand that by

2    pleading guilty, you'll be convicted of that charge

3    just as if you had gone to trial on a plea of not

4    guilty and were convicted by a jury?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  The maximum punishment you could

7    receive based on the conviction that would result from

8    your guilty plea is a term of imprisonment of up to 20

9    years, a fine of up to $250,000, a special assessment

10   of $100, and a period of supervised release of up to 3

11   years.  Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  All right.  The period of

14   supervised release is in addition to any term of

15   imprisonment that may be imposed.  It would have

16   certain conditions that you would need to comply with.

17   If you failed to comply with those conditions, you

18   could be returned for all or part of that period of

19   supervised release even if you had satisfied those

20   conditions during a portion of your supervised release.

21   Do you understand that?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Also, we've abolished parole in

24   the federal system.  So you will, in fact, serve the

25   full length of any term of imprisonment that's imposed

1  subject only to a relatively modest reduction up to a

2  maximum of 15 percent of your sentence based on good

3  behavior.  Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  I understand that you have not

6  entered into any formal written plea agreement with the

7  government concerning this charge.  Is that correct?

8          THE DEFENDANT:  Regarding the possession

9  charge?

10         THE COURT:  Yes.

11         THE DEFENDANT:  There's no agreement.

12         THE COURT:  All right.  Is that correct,

13 Mr. Zwerling?  There's no formal written plea

14 agreement?

15         MR. ZWERLING:  Yes, Your Honor.

16         THE COURT:  Mr. Gardner, am I correct there's

17 been no plea offers that you've reached -- plea

18 agreements that you've reached with the defendant

19 concerning this charge?

20         MR. GARDNER:  There was an offer.  It was

21 rejected.  And there is no plea agreement between the

22 government and the defense.

23         THE COURT:  All right.  Do you think,

24 Mr. Schnittker, that you have any agreements, promises,

25 or understandings with the United States government

1  with respect to the guilty plea that you would enter as

2  to the possession of child pornography charge?

3            THE DEFENDANT:  No, Your Honor.

4            THE COURT:  Has your counsel explained to you

5  the rights you have, the constitutional rights you have

6  as someone charged with a crime and that you would

7  waive, give up those rights by pleading guilty?

8            THE DEFENDANT:  Yes, he has.

9            THE COURT:  You have the absolute right to

10  proceed to trial on your plea of not guilty and have a

11  public speedy trial before a jury of 12 United States

12  citizens.  Do you understand that?

13            THE DEFENDANT:  Yes, I do, Your Honor.

14            THE COURT:  At that trial, you would be

15  presumed innocent and the government would be required

16  to prove this charge and all the elements of this

17  charge beyond a reasonable doubt.  Do you understand?

18            THE DEFENDANT:  Yes, I do.

19            THE COURT:  You would be entitled to have

20  counsel during that trial.  If you could not afford

21  one, one would be appointed for you.  Do you

22  understand?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  At that trial, you would be

25  presumed innocent of this charge.  Do you understand?

1         THE DEFENDANT:  Yes, Your Honor.

2         THE COURT:  You also would have the right to

3    confront any witnesses that the government presented.

4    You and your lawyer would have the right to

5    cross-examine those witnesses and to challenge the

6    admissibility of any evidence that the government

7    offered.  Do you understand?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Also, as part of that trial, you

10   would have right to present your own defense, and that

11   would include the right to present evidence.  Do you

12   understand?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  You also would have the right, as

15   part of your defense, to testify yourself, to take the

16   stand, be placed under oath subject to

17   cross-examination, and testify.  Do you understand?

18        THE DEFENDANT:  Yes, Your Honor.

19        THE COURT:  You would have no obligation,

20   however, to testify.  You could remain silent in the

21   face of this charge.  And if you decided not to testify

22   and to remain silent, the government could not force

23   you to testify or to incriminate yourself in any way.

24   Do you understand?

25        THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  You also would have the right to
2   require any person with any relevant information to be
3   brought into court and to testify and to bring with him
4   or her any documents relevant to this charge.  Do you
5   understand?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Also, if you decided not to
8   testify and to remain silent, no inference of guilt
9   could be inferred from the fact that you decided not to
10  testify.  You would continue to be presumed innocent of
11  this charge, and the government would continue to have
12  the obligation of proving this charge beyond a
13  reasonable doubt.  Do you understand?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  If after that trial you were
16  convicted, you would have the right to appeal that
17  conviction to a higher court together with any sentence
18  that's imposed based on that conviction.  Do you
19  understand?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  By pleading guilty, there won't
22  be any trial on this charge, and all that would be left
23  for the Court to do with respect to this charge would
24  be to determine what sentence to impose.  Do you
25  understand?

12

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Also, by pleading guilty, you

3     would waive all of these rights that you have.  Do you

4     understand?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Having heard all of these rights

7     that you have and that you would give up, that is waive

8     these rights by pleading guilty, is it still your

9     decision to enter a guilty plea here today as to

10    Count 2?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  In addition to the constitutional

13    rights that I've mentioned, there will be other

14    consequences issuing from your guilty plea, and that

15    would include a forfeiture of any right you might have

16    to vote, hold public office, serve on a jury, or

17    possess a firearm.  Do you understand?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  There may also be other

20    consequences that are imposed in connection with this

21    charge, including the requirement that you register

22    under various sexual offender registration statutes.

23    Do you understand that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Have you spoken with your lawyer

1  about how the Court will go about determining what

2  sentence to impose in this case?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Have you discussed what we call

5  the sentencing guidelines and how they pertain to you

6  and your offense, this particular offense?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Those are only guidelines.  The

9  Court is not obligated to impose a guideline sentence.

10 It may impose a guideline sentence, or it may impose a

11 sentence greater than the guidelines or less than the

12 guidelines, obligated only to impose an appropriate

13 sentence within the maximum punishment that I described

14 to you.  Do you understand?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  It is also the case that the

17 Court will not be able to determine definitively what

18 the guideline sentence is until it has an opportunity

19 to review a presentence report and your lawyer and the

20 government and you have had an opportunity to review

21 that report and to object to any information in it.  Do

22 you understand?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And in addition to the

25 guidelines, the Court will consider a whole range of

1  other considerations, including the nature and

2  seriousness of this particular offense, your own

3  personal history and characteristics, and generally,

4  what sentence will be sufficient but no more than

5  necessary to constitute a just punishment and to

6  protect the public.  Do you understand those are the

7  kinds of considerations the Court will engage in?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  It is also the case that the

10 Court will not be bound by any recommendations.  Only

11 the Court will decide what sentence to impose.  Do you

12 understand?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  So if you receive a sentence that

15 is different than what the government recommends or

16 what your lawyer recommends or if you receive a

17 sentence that's different than someone told you you're

18 likely to receive or if it's different than what you're

19 expecting or if you receive a sentence that you just

20 think is unfair in some way, you nevertheless are going

21 to be bound by your guilty plea and you will not be

22 permitted to withdraw your guilty plea after you hear

23 what the sentence is.  Do you understand that?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  In a moment, I'm going to ask

1  Mr. Gardner to tell the Court what evidence it would

2  present as to this charge were this case to go to

3  trial.  I want you to listen carefully to what he tells

4  the Court.  Because when he's done, I'm going to ask

5  you whether you disagree with anything he's told the

6  Court about your conduct.

7          Have a seat for a moment.  We'll hear from

8  the government.

9          MR. GARDNER:  Thank you, Your Honor.

10          At trial the government would prove the

11  following:

12          That on November 7, 2013, law enforcement

13  officers executed a federal search warrant on

14  Mr. Schnittker's residence in Sterling, Virginia.

15  During the search of that residence, law enforcement

16  officers seized various computer media, including a

17  Western Digital MyBook external hard drive.  The

18  Western Digital hard drive was examined by a computer

19  forensic expert.  The Western Digital hard drive

20  contained thousands of images and videos of

21  pornography, the vast majority of which were adult

22  pornography.

23          In addition, the Western Digital hard drive

24  contained over 1,000 images and videos of child

25  pornography.

1          The child pornography on the Western Digital

2   hard drive depicts actual children under 18 engaging in

3   sexually explicit activity.  Dozens of the videos

4   featured children as young as 5 years old being raped

5   and sexually exploited.  Numerous other videos and

6   images featured children under 12 who were bound with

7   duct tape or ropes and raped and sexually exploited.

8          The child pornography was in folders that

9   indicated child pornography, such as PTHC, LSM, and Dek

10  XXX.

11         Mr. Schnittker knowingly possessed the child

12  pornography on the Western Digital hard drive.

13         The child pornography images and videos on

14  the Western Digital hard drive were transported using a

15  means and facility of interstate commerce.

16  Specifically, some of the child pornography was

17  originally in child porn magazines that were

18  transported from outside of Virginia to

19  Mr. Schnittker's residence and scanned onto the Western

20  Digital hard drive.  Some of the remainder of the child

21  pornography was at some point transported using the

22  Internet.

23         Thank you, Your Honor.

24         THE COURT:  Thank you.

25         Mr. Schnittker, would you return to the

17

1  podium.

2           Do you disagree with anything the government

3  has told the Court about your conduct?

4           THE DEFENDANT:  No, Your Honor.

5           THE COURT:  I understand you've also signed a

6  written statement of facts.  Is that correct?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Do you have that document in

9  front of you?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Does your signature appear on

12 that document?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Did you read that document?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Did you understand everything in

17 that document?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Did you have all of your

20 questions answered about that document?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Did anyone threaten you or try to

23 influence you in any way into signing that written

24 statement of facts against your will?

25          THE DEFENDANT:  No, Your Honor.

18

1          THE COURT:  Are the statements in this
2   written statement of facts true and correct?
3          THE DEFENDANT:  I haven't seen the images
4   they refer to myself, but my lawyer has seen them.  I
5   believe my lawyer.  So yes, I agree with it.
6          THE COURT:  Is it your decision here today to
7   plead guilty to this charge because you are, in fact,
8   guilty of this charge?
9          THE DEFENDANT:  Yes, Your Honor.
10          THE COURT:  Mr. Zwerling, based on everything
11   you know, is there an adequate factual basis for the
12   plea in this case?
13          MR. ZWERLING:  Yes, Your Honor.  Counsel has
14   reviewed the photographs.  Some of them are as
15   described.
16          THE COURT:  All right.  Thank you.
17          Before pleading further to Count 2 of the
18   indictment, do you want to speak any further with your
19   lawyer?
20          THE DEFENDANT:  No, Your Honor.
21          THE COURT:  With respect to Count 2 of the
22   indictment charging possession of child pornography, in
23   violation of Title 18, United States Code,
24   Section 2252(a)(4), how do you plead?  Guilty or not
25   guilty?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  Let the record reflect that based

3   on the responses of this defendant to the Court's

4   questions, the representations of counsel for the

5   government and for the defendant, it is the finding of

6   this Court in the case of *United States v. Michael*

7   *Schnittker* that the defendant is fully competent and

8   capable of entering an informed plea, that the

9   defendant is aware of the nature of the charge and the

10  consequences of the plea and that the plea of guilty is

11  a knowing and voluntary plea supported by an

12  independent basis in fact containing each of the

13  essential elements of the offense.  The plea is

14  therefore accepted, and the defendant is now adjudged

15  guilty of that offense.

16          Mr. Schnittker, I am not going to sentence

17  you today on this count.  I'm going to set this matter

18  down for sentencing on July 25 at 9:00 a.m. in this

19  courtroom.

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Between now and then, you'll have

22  an opportunity to be interviewed by a representative of

23  Pretrial Services and Probation.  That will be an

24  opportunity for you to share with that office and,

25  through that office, this Court any information you

1  think would be helpful to the Court in deciding what an

2  appropriate sentence is in your case.  You may be

3  accompanied by your lawyer during that interview.

4             THE DEFENDANT:  Yes, Your Honor.

5             THE COURT:  All right.  What's the

6  government's position on release pending sentencing?

7             MR. GARDNER:  The government defers to the

8  Court, Your Honor.

9             THE COURT:  All right.  Mr. Schnittker, I'm

10 going to allow you to continue on release pending

11 sentencing and a final disposition of this case on the

12 same terms and conditions as have been previously

13 imposed.  You're going to remain under the pretrial

14 supervision of Pretrial Services.

15            THE DEFENDANT:  Thank you.

16            THE COURT:  All right.  With respect to the

17 remaining charge, I understand that would you like to

18 waive a jury.  Is that correct?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  And you've signed a waiver of

21 jury form.  Do you have that in front of you?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  Your signature appears on that

24 document?

25            THE DEFENDANT:  Yes, Your Honor.

1              THE COURT:   You read that document?

2              THE DEFENDANT:   I have read it, yes, Your

3    Honor.

4              THE COURT:   Have you understood everything

5    about that document?

6              THE DEFENDANT:   Yes, Your Honor.

7              THE COURT:   Have you had all your questions

8    answered?

9              THE DEFENDANT:   Yes, Your Honor.

10             THE COURT:   Anyone threaten you or try to

11   influence you in any way into signing that document

12   against your will?

13             THE DEFENDANT:   No, Your Honor.

14             THE COURT:   Have you discussed with counsel

15   whether or not you should be waiving a jury in this

16   case?

17             THE DEFENDANT:   Yes, Your Honor.

18             THE COURT:   Has he explained to you the

19   advantages and disadvantages of proceeding to trial

20   with a jury?

21             THE DEFENDANT:   Yes, Your Honor.

22             THE COURT:   Do you understand that in order

23   to convict you of this charge, the jury would need to

24   be unanimous?   That means that if only one person

25   decided that you were not guilty, you could not be

1    convicted of this charge.  Do you understand?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Also, by waiving a jury, only the

4    Court will decide both guilt or innocence, as well as

5    impose the sentence.  Do you understand that?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  All right.  Mr. Zwerling, based

8    on everything you know, is Mr. Schnittker competent to

9    waive a jury trial in this case?

10           MR. ZWERLING:  Yes, he is, Your Honor.

11           THE COURT:  Mr. Gardner, I understand the

12    government approves of this waiver.

13           MR. GARDNER:  Yes, Your Honor.

14           THE COURT:  Let the record reflect that based

15    on the responses of this defendant, the Court finds and

16    concludes that the defendant is competent to waive a

17    grand jury and that he has knowingly and voluntarily

18    done so.  I have before me the waiver that

19    Mr. Schnittker has signed endorsed by Mr. Gardner.  The

20    Court will approve the waiver and has signed the

21    waiver.

22           Anything further?

23           MR. ZWERLING:  Yes, Your Honor.  Just as a

24    housekeeping matter, the statement of facts, I believe,

25    is four or five numbered pages.  One of them on page 3

1   is blank.  We left it there so that it wouldn't look
2   like a meaningful page was torn out of the statement of
3   facts, but I wanted the Court to understand why there's
4   a blank page.
5           THE COURT:  I see.  Thank you.
6           Anything further?
7           MR. ZWERLING:  No, Your Honor.
8           THE COURT:  Mr. Gardner?
9           MR. GARDNER:  No, Your Honor.
10          THE COURT:  All right.  Counsel is excused.
11          The defendant is released pending trial.
12          All right.  The Court will stand in recess.
13          -----------------------------------
                    Time:  9:53 a.m.
14
15
16
17
18
19
20
21
22      I certify that the foregoing is a true and
23   accurate transcription of my stenographic notes.
24
25                          _____/s/_____
                        Rhonda F. Montgomery, CCR, RPR

Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599