IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL SCHNITTKER, | ) | CRIMINAL NO. 1:14-CR-86 |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S POSITION WITH RESPECT TO SENTENCING

COMES NOW, the defendant, Michael Schnittker, and in accordance with 18 U.S.C. Section 3553(a) and Section 6A1.2 of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), respectfully submits to this Honorable Court his position with respect to sentencing. The mandatory minimum sentence in this case is five years, which is far greater than necessary to effectuate the goals of sentencing. It is unconstitutional and excessive. For the reasons set out below, Mr. Schnittker respectfully requests that this Honorable Court vary from the recommended Sentencing Guideline range and sentence him to 2 years imprisonment, notwithstanding the mandatory minimum of five years in this case. In further support of his position, Mr. Schnittker offers the following:

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, require district courts to consider both the U.S.S.G. range and all of the factors contained in 18 U.S.C. Section 3553(a) when calculating a criminal defendant's ultimate sentence. District courts are instructed first to correctly calculate the guideline range and then consider the factors in Section 3553(a) to determine whether a sentence within the guideline

range is appropriate or whether a variance from the guideline range is warranted. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).  There is no presumption of reasonableness attached to the guideline range nor is there a presumption of unreasonableness to a non-guideline range sentence. *See id.* at 50. Following a consideration of the guideline range along with the Section 3553(a) factors in relation to the facts of the case, the court shall impose a sentence sufficient, but not greater than necessary to comply with the intent of Section 3553(a). *See id.* at 52 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue").

In the instant case, we submit that a sentence of five years is far greater than necessary to accomplish the goals of sentencing under section 3553(a), and is not an appropriate sentence in this case.  The instant request is a variance from the advisory guideline range of an 11 year low end sentence; however, it is fair and appropriate when analyzed, as follows, through the lens of the Section 3553(a) sentencing factors.  To streamline the analysis, the first section briefly summarizes Schnittker's background and specific characteristics, including the content of the attached letters, awards, and medical assessments, and the second section identifies and discusses the factors relating the offense itself, the need for a proper punishment for the offense, and how other courts have treated this type of offense.

I.    <u>History and Characteristics of the Defendant:</u>

Mr. Schnittker's was a public servant with the CIA for virtually his entire career, before retiring a few years ago.  His awards from his service with the CIA are attached as Exhibit A,

and his letters from his family detail his dedication and service to his county, and are attached as Exhibit B.  His sister Kathryn White notes that in addition to giving his career to his country, he has also been generous with his family.  She observes that he was available when his niece was struggling with lymphoma and when she passed away.   She also notes that he was "a great help to our parents in their declining years.  I can still remember how he lifted our Mom into the wheelchair and into the car."  She further notes that "[o]ver the years different nieces and nephews stayed at his home for a time and he financially aided others.  He has also been very good to his mother in Thailand."  She further notes that "Michael provided a college education to both of his children" and that "[a]fter the divorce of his oldest daughter he bought her a condo for her to live in and helped her to get established again."

His daughter notes the lengths he went to in service to his country and family.  Christina Schnittker observes that Michael has "taken care of my mother, sister, and myself very well." She notes that "he continued working even after he retired, joining in a two month mission in Iraq and then working with the government for several more years before retiring again.  Only my father would willingly live like this to benefit his family.  His wife Sununta Schnittker elaborates in her letter upon the reasons why she believes "he has always been a good husband and a decent man, and a loving and protective father."

His addiction counselor, Paul Becker, indicates that in his treatment Mr. Schnittker "participates fully and has made significant progress" and that he would be "willing to commit to working with him and fostering his recovery from sexual addiction."  *See* Exhibit C. Further, Dr. Morote concludes that Mr. Schnittker suffers from a hoarding and compulsive disorder complex. See Exhibit D at 7.  This compulsive addiction to gather and hoard all forms of pornography as

well as countless other legal items was the cause of the large quantities identified in this case.  It was noted that this condition, like the sexual addiction, has not been treated and is only now for the first time being treated.  Further the report notes that "Mr. Schnittker expressed a profound sense of guilt and self-recrimination regarding his inability to curb his collecting and cataloguing behaviors and the negative impacts that these behaviors have had on his wife and daughters."

Finally, the report of Mr. Sickler indicates that "[g]iven Mr. Schnittker's age, his physical shape of 240 pounds at a height of five and a half feet, and his medical conditions, documented in his PSR and medical reports, including diabetes, high cholesterol, high blood pressure, hypertension, gout, and depression, he is very likely to be among the most vulnerable of inmates."  Exhibit E at 4. It further explains that due to the nature of the conviction, he will not be eligible for a minimum security facility and will be sent to an FCI. He notes that "inmates at FCIs are often serving sentences greater than 10 years, may have a prior history involving a gun or violent offense, may be gang affiliated, or are otherwise poor security risks." He notes that they also house individuals "with histories of violence, members of organized crime and, or course, sex offenders."  He explains that he has "concerns as to Mr. Schnittker's vulnerability and his inability to protect not just his property but also his own person. Given my experience in the field of corrections, I predict that Mr. Schnittker will present as a proverbial 'fish out of water', trying his best to serve his sentence in a form of self-imposed isolation, avoiding interaction with other inmates who are likely to present as a danger to him. His future experiences will likely be much more severe and punitive than had he been eligible to be incarcerated in a camp."  His letter explains in detail why his situation will be very difficult in this environment.  He suggests, and we would also request, in partial mitigation of these circumstances, that the Court recommend designation to FCI Petersburg Low, and that he be permitted to self-surrender so as to facilitate acceptance at this facility.

II.     Nature and Circumstances of the Offense, The Need to Promote Respect for the Law,
        and the Need to Avoid Unwarranted Sentencing Disparities

The nature and circumstances of Mr Schnittker's offense are largely addressed in the offense conduct portion of the Presentence Investigation Report ("PSR") as well as the statement of facts, ECF 27, submitted at the time of his guilty plea.  In many ways, this is a mine-run child-pornography receipt conviction involving an individual who only collected child pornography, but who never engaged in sexual acts with minors, or communicated with them. It is less serious than some others in that Mr. Schnittker's pornography collection overwhelmingly constituted adult pornography, and his collection of all forms of pornography resulted from a diagnosed DSM hoarding addition (which also encompassed the hoarding of magazines, plaster model kits, books, movies, model trains, etc), rather than a particularized sexual deviancy towards children. *See* Morote Report at 3 and Statement of Facts, ECF #27.

Moreover, his offense is like the overwhelming majority of child pornography cases in terms of the applicable enhancements.  There is a two point enhancement because the material at issue included photographs of minors under the age of twelve.  The "United States Sentencing Commission statistics show[] that, in 2009, '94.8% of child pornography sentences involved an image of a prepubescent minor.'" *United States v. D.M.*, 942 F. Supp. 2d 327, 343-44 (E.D.N.Y. 2013).  There is a five point enhancement because the offense involved the possession of 600 or more images, and according to the United States Sentencing Commission, 63.1% of offenses implicate this enhancement. *Id.* There is a four point enhancement related to images showing masochistic conduct, which are implicated in 73.4% of cases according to the United States Sentencing Commission.  *Id.*

Page **5** of **15**

There is a two point enhancement for the use of a computer, which is an out-of-date enhancement from 1995 which in the modern era is effectively part of the base offense level offense, given the ubiquity of computers in 2014.  *United States v. C.R.*, 792 F. Supp. 2d 343, 512 (E.D.N.Y. 2011) (reversed on other grounds sub nom. *United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013) ("The two-point enhancement for use of a computer is not applied. Virtually all child pornography crimes involve the use of a computer. Adding two points results in double counting and is not sufficiently particularized to the facts of the case. *See Stabenow, supra* at 16 ('In 2006, 97% of the 1,012 child pornography defendants had used a computer. Today, forensic computer technology and monitoring facilitates, not thwarts, the investigation of child pornography offenses. So, if a client today used a computer, <u>but did not widely disseminate the images, did not use them to entice or coerce a child, and did not show them to a child, then their conduct is completely outside the scope of the fear that prompted Congress to require the enhancement, and therefore a variance should be considered</u>.').") (emphasis added).

Analogously, virtually all modern downloading of child pornography occurs on filing sharing programs.  The probation officer indicated to undersigned counsel that Mr. Schnittker did not receive a 2 level downward departure under 2G2.2(b)(1) because he used a file sharing program to download pornography. Files that may have been in the process of downloading, or other files which had been incompletely downloaded but not yet moved to the hard drives, were intercepted by law enforcement.  All completely downloaded files were moved off the generic computer and were not available for download by others.  Moreover, there is no evidence that Mr. Schnittker intended to disseminate any images, or knew that incompletely downloaded images could be intercepted and downloaded by others. 2G2.2(b)(1) appears to have an "intent"

element.  Nonetheless, so goes the apparent argument, everyone who uses a file sharing program "should know" that incompletely downloaded files can be intercepted by others, and therefore virtually everyone who downloads child pornography is also deprived of the application of this departure.  Under the reasoning applied in *Stabenow* and *C.R.* as well as the specific facts of this case, this Court also should provide a sentence which appropriately accounts for the modern state of technology and the facts of this case.

As noted by *D.M.*, 942 F. Supp. 2d at 350, the Sentencing Commission itself has acknowledged these problems with mine-run child pornography offenses in the Commission Rep. on Fed. Child Pornography Offenses ii-iii.

> Non-production child pornography offenses have become almost exclusively Internet-enabled crimes; the typical offender today uses modern Internet-based technologies such as peer-to-peer ("P2P") file-sharing programs that were just emerging only a decade ago and that now facilitate large collections of child pornography. The typical offender's collection not only has grown in volume but also contains a wide variety of graphic sexual images (including images of very young victims), which are now readily available on the Internet. As a result, four of the six sentencing enhancements in § 2G2.2—those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 levels—now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in § 2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.

Further, there is a 4 point enhancement for "receipt" as opposed to "possession" under the guidelines.  But "the differences between the receipt of child pornography and the possession of child pornography are distinctions without a difference." *United States v. Marshall*, 870 F. Supp. 2d 489, 497 (N.D. Ohio 2012) *aff'd,* 736 F.3d 492 (6th Cir. 2013) (citing *United States v. Robinson,* 669 F.3d 767, 776 n. 2 (6th Cir.2012) ("the current statutory scheme makes no

principled distinction between possessing and receiving child pornography, which can often times be virtually identical conduct." As appellate authority makes clear, there is no logical justification for a receipt sentence to be many years longer than the crime of possession.

As noted above, this is a mine-run child pornography case in which the Defendant "did not widely disseminate the images, did not use them to entice or coerce a child, and did not show them to a child." *C.R.*, 792 F. Supp. 2d at 512 (citing *Stabenow, supra* at 16). The overwhelming majority of offenders are nonetheless subject to the same enhancements as Mr. Schnittker, which result in a base level offense of 35 for most offenders, which for lifelong, crime-free, non-violent offenders, still carries a range of 168-210 months. We note that the base offense level for attempted murder is a level 33 under USSG 2A2.1, the total offense level for violent rape with life threatening injuries is 34 (USSG 2A3.1(a)(2) & (b)(4)), the base level offense for child kidnapping is 32 (USSG 2A4.1), and the base level offense for sex trafficking of children under the age of 14 by use of violence and force is a level 34 (USSG 2G1.1).

The problems with the child porn guidelines are well documented. As noted in *D.M.*, 942 F. Supp. 2d, 347- 352:

> The unreasonable harshness of the Guidelines for an offense of child pornography possession, of which defendant is charged, has been recognized by courts and judges from across the country. *See, e.g., United States v. Pulsifer,* 469 Fed.Appx. 41, 44 (2d Cir.2012) (describing the "unusually harsh impact of the child pornography Guidelines"); *United States v. Stone,* 575 F.3d 83, 97 (1st Cir.2009) (expressing the "view that the sentencing guidelines [for child pornography] are in our judgment harsher than necessary"); *United States v. Henderson,* 649 F.3d 955, 964 (9th Cir.2011) (Berzon, J., concurring) (describing the "unjust and sometimes bizarre results" that follow from application of the child pornography Guidelines)
> . . .
> At their inception, in 1987, the Guidelines for child pornography covered only the crimes of transporting, receiving, and trafficking offenses. *See*

*C.R.,* 792 F.Supp.2d at 478. Possession of child pornography was not then a federal crime. *Id.* But, as Harvard Law School professor Carol S. Streiker has recognized: [T]he treatment of child pornography has been a one-way ratchet, repeatedly turned by Congress. In a little more than two decades, the child pornography Guidelines were substantively revised nine times, with each revision either extending the scope of the offense or making the penalty harsher. In the span of a single decade (from 1997 to 2007), the mean sentence of child pornography offenders increased from 20.59–months to 91.30–months confinement—an increase of 443%.

. . .

The Court of Appeals for the First, Second, Third and Ninth Circuits—as well as district courts—have expressly recognized what little deference the child pornography Guidelines are owed. *See Dorvee,* 616 F.3d at 188; *Henderson,* 649 F.3d at 960 (holding that "district judges must enjoy the same liberty to depart from [the child pornography guideline] based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough* ); *United States v. Grober,* 624 F.3d 592, 609 (3d Cir.2010) (affirming district court's decision based on policy disagreement not to apply recommended Guidelines range for child pornography offense); *Stone,* 575 F.3d at 93 (recognizing district court's authority to vary from child pornography Guidelines); *Munoz,* 2012 WL 5351750, at *4 n. 2 (citing cases); *see also United States v. Huffstatler,* 571 F.3d 620, 623 (7th Cir.2009) (per curiam) ("[W]hile district courts perhaps have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines, as with the crack guidelines, they are certainly not required to do so.").

. . .

Widespread criticism from the judiciary and others supports the Sentencing Commission's recent proclamation that it "concurs with the many stakeholders who contend that *the sentencing scheme should be revised* to better reflect both technological changes in offense conduct and emerging social science research and also better account for the variations in offenders' culpability and their sexual dangerousness." Comm'n Rep. on Fed. Child Pornography Offenses 15 (emphasis added). Action must be taken, argues the Commission, to ensure that the Guidelines more rationally "account for recent technological changes in offense conduct and emerging social science research about offenders' behaviors and histories, and also to better promote the purpose of punishment by accounting for the variations in offenders' culpability and sexual dangerousness." *Id.* at xvii.

With respect to disparities, courts from around the country routinely apply probationary sentences in cases like the one before the court. *See, e.g.* Jelani Jefferson Exum, *What's*

*Happening with Child Pornography Sentencing?,* 24 Fed. Sent'g Rep. 85, 89 (2011) ("growing consensus among district court judges and the broader legal community that federal sentences for possession of child pornography are too harsh"); U.S. Sent'g Comm., Results of Survey of U.S. Dist. Judges, Jan. 2010 through Mar. 2010, Question 8 (June 2010) (finding that 70% of United States District Judges believe Guideline range for child pornography possession is too high and 69% of United States District Judges believe range for child pornography receipt is too high). Sentences imposing no or very little incarceration are not uncommon for offenders convicted only of possessing child pornography. *See, e.g., United States v. Autery,* 555 F.3d 864 (9th Cir.2009) (affirming non-Guidelines sentence of five years of probation and no period of incarceration for possession of child pornography); *United States v. Stall,* 581 F.3d 276 (6th Cir.2009) (affirming non-Guidelines sentence of one day of incarceration followed by ten-year period of supervised release); *United States v. Prisel,* 316 Fed.Appx. 377 (6th Cir.2008) (affirming non-Guidelines sentence of one day in prison followed by eighteen months of home confinement for possession of child pornography); *United States v. Rowan,* 530 F.3d 379 (5th Cir.2008) (affirming non-Guidelines sentence of five years of probation and no period of incarceration for possession of child pornography); *United States v. Polito,* 215 Fed.Appx. 354 (5th Cir.2007) (per curium) (affirming non-Guidelines sentence of five years of probation with one year of house arrest for possession of child pornography); *United States v. Diaz,* 720 F.Supp.2d 1039 (E.D.Wis.2010) (imposing non-Guidelines sentence of six months of incarceration followed by twelve years' supervised release); *United States v. Meillier,* 650 F.Supp.2d 887 (D.Minn.2009) (imposing non-Guidelines sentence of one day of confinement followed by thirty years of supervised release); *United States v. Boyden,* No. 06–CR–20243,

2007 WL 1725402, at *10 (E.D.Mich. June 14, 2007) (imposing non-Guidelines sentence of one day of confinement followed by three years of supervised release, the first year of which to be served in a community correctional facility); *United States v. Evren,* No. 10–CR–131–JG (E.D.N.Y. Feb. 26, 2013), ECF No. 59 (imposing non-Guidelines sentence of three years of probation for defendant who pleaded guilty to one count of possession of child pornography). *See also United States v. Morace,* 594 F.3d 340, 351 n. 10 (4th Cir.2010) (noting "that some district courts have begun sentencing defendants convicted of possessing child pornography to one day of incarceration followed by a term of supervised release"); U.S. Sentencing Comm'n, Report to the Congress: Federal Child Pornography Offenses 7 (Dec. 2012) ("Comm'n Rep. on Fed. Child Pornography Offenses") ("[D]efendants sentenced under the non-production child pornography guidelines have received sentences outside of the applicable guidelines more frequently than defendants in all other major types of federal criminal cases.");

Thus, a sentence that would avoid unwarranted sentencing disparities in this case is a sentence of probation.  However, because of the receipt conviction in this case, there is a mandatory minimum of five years incarceration.  In support of counsel's eighth amendment argument, counsel relies principally on two authorities: *United States v. Marshall*, 870 F. Supp. 2d 489, 490-500 (N.D. Ohio 2012) *aff'd,* 736 F.3d 492 (6th Cir. 2013) and *United States v. Hashime*, 734 F.3d 278 (4th Cir. 2013). Because *Marshall* offers such a thorough and comprehensive analysis of this issue, involving a defendant with the same enhancements, its analysis is the most on point with respect to the eighth amendment analysis and is quoted below:

> Two factors in this case—present in virtually every child pornography case—operate as enhancements to increase Defendant's Guidelines range (151 months minimum) above the statutory mandatory minimum (60 months), even for a first-time offender: use of a computer (PSR ¶ 38) and

number of depictions (PSR ¶ 39). These two enhancements, which are unsupported by empirical research, skew almost all child pornography receipt and possession cases upward and fail to provide meaningful separation of offenders. *See* Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming \*494 the Child Pornography Guidelines,* 24 Fed. Sent'g Rep. 2, 122 (2011). For instance, when the computer-use enhancement was first introduced, only 28% of offenders used computers. Today, nearly 97% of offenders use a computer, and the enhancement is, for all intents and purposes, part-and-parcel of the offense. *Id.*

. . .

These two problematic enhancements do not stand alone. The current Guidelines also seek to punish two types of image content, both applicable to the instant case. First, two levels were added for images involving prepubescent children (PSR ¶ 35), an enhancement that applies when the material involves a minor under the age of 12. Second, four levels were added for images portraying sadistic or masochistic conduct (PSR ¶ 37), an enhancement that applies even if the judge is certain that the offender had no intention of receiving or possessing such material. A single file typically triggers both enhancements. Stabenow at 126.

. . .

For these reasons, the Guidelines do not deserve controlling weight in this case. *See Grober,* 595 F.Supp.2d at 397 (finding many of the "offense characteristics" in Section 2G2.2 are "not genuine aggravating factors," but rather characteristics "inherent in just about any downloading offense" such that using them as enhancements is "irrational"). Instead, the more general sentencing factors set forth in Section 3553(a) trump the Guidelines.

. . .

**Section 2252 is Inconsistent with Section 3553 as Interpreted by *Booker***

. . .

In this case, however, the mandatory minimum sentencing scheme of Section 2252(b) is in direct conflict with this Court's mandate under Section 3553(a) to fashion an appropriate sentence. The Sixth Circuit has not yet evaluated the potential conflict between mandatory minimum sentences and the factors under Section 3553(a) through the lens of *Booker* and its progeny.

. . .

The problem is especially apparent where the differences between the receipt of child pornography and the possession of child pornography are distinctions without a difference. Yet one carries a mandatory minimum of five years while the other has none. Conduct which could apply to either violation necessarily results in the potential for gross disparities in sentences—a fact the Sixth Circuit has previously recognized. *See United*

*States v. Robinson,* 669 F.3d 767, 776 n. 2 (6th Cir.2012) ("We note that standing alone, the current statutory scheme makes *no principled distinction between possessing and receiving child pornography*, which can often times be virtually identical conduct, but nonetheless results in vastly different mandatory sentencing ranges.")

. . .

This tension between possession and receipt effectively places in the prosecutor the ability to determine the defendant's sentence, a role reserved for the judiciary. In short, a prosecutor through a charging decision controls the sentencing range in cases involving the possession and/or receipt of child pornography. The concern that a mandatory minimum shifts too much power from the judiciary to the executive was expressed by Justice Kennedy:

> Under the federal mandatory minimum statutes a sentence can be mitigated by a prosecutorial decision not to charge certain counts. There is debate about this, but in my view, a transfer of sentencing discretion from a judge to an Assistant U.S. Attorney ... is misguided. Often these attorneys try in good faith to be fair in the exercise of discretion. The policy, nonetheless, gives the decision to an assistant prosecutor not trained in the exercise of discretion and takes discretion from the trial judge. The trial judge is the one actor in the system most experienced with exercising discretion in a transparent, open, and reasoned way. Most of the sentencing discretion should be with the judge, not the prosecutors.

For all the above reasons, this Court believes 60 months is excessive, unjust, and greater than necessary as applied to this Defendant (and may well be cruel and unusual).

Despite the court's belief that the 60 month sentence was excessive and unjust, the court did not find an Eighth Amendment violation because of its concern about circuit precedent, and "arrive[d] at a frustrating conclusion: it is statutorily bound to impose a sentence of 60 months, and does so, while at the same time emphasizing its strong disagreement."  The Second Circuit has also reversed a district court's conclusion that the child pornography mandatory minimum is subject to as applied, eighth amendment challenges.  *United States v. Reingold*, 731 F.3d 204 (2d

Cir. 2013).  However, Judge King, concurring in the Fourth Circuit's *Hashime* opinion noted that the door was potentially more open to such challenges in the Fourth Circuit, stating that in child pornography cases "where a sentence of less than life imprisonment has been imposed upon a defendant, proportionality review under the Eighth Amendment is discretionary."  734 F.3d at 288.  In this case, a sentence of probation is appropriate under 3553(a) as a sentence that is not greater than necessary to effectuate the goals of sentencing, while a sentence of two years is the least sentence that does not constitute punishment that violates the Eighth Amendment.  It is for this reason that a two year sentence is requested in lieu of probation.  It is important to note that a multi-year period of incarceration is not a "slap on the wrist" as stated by the courts above, and additionally he will forever have the felony convictions, limiting employment opportunities, and his status as a sex offender will not only limit employment opportunities, but also his freedom of movement and other freedoms for the remainder of this life.  A sentence of two years is greater than necessary to effectuate the purposes of punishment but is not a cruel and unusual sentence.

<u>Conclusion</u>

WHEREFORE, for the foregoing reasons, and any others that may appear to the court or that may develop at the sentencing hearing, Mr Schnittker respectfully requests that this Honorable Court sentence him to a term of two years incarceration, which is greater than necessary to accomplish the goals of sentencing under 3553(a), but is the least harsh sentence that would avoid an Eighth Amendment violation.  We further request that the Court recommend designation to Petersburg Low, with self surrender, and that it further recommend treatment under the RDAP program to deal with his alcoholism as noted in the PSR report.

Page **14** of **15**

Respectfully submitted,

MICHAEL SCHNITTKER
By Counsel

_____/s/_____
John Zwerling, Va. Bar No. 8201
Cary Citronberg, Va Bar. No 81363
Law Offices of John Zwerling, P.C.
114 North Alfred Street
Alexandria, Virginia 22314
Ph: 703-684-8000
Fax: 703-684-9700
jz@zwerling.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November, 2014, I electronically filed a

true copy of the foregoing motion with the Clerk of Court using the CM/ECF system,

which will send a notification of such filing (NEF) to all parties.

_____/s/_____
Cary Citronberg, Va Bar. No 81363
Law Offices of John Zwerling, P.C.
114 North Alfred Street
Alexandria, Virginia 22314
Ph: 703-684-8000
Fax: 703-684-9700
cary@zwerling.com