IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )   |   |
| ) | CRIMINAL NO.  1:14-CR-86 |
| v.                                                  )   |   |
| ) | Sentencing Date: November 21, 2014 |
| MICHAEL SCHNITTKER,               )   |   |
| ) | The Honorable Anthony J. Trenga |
| Defendant.              )   |   |

**POSITION OF THE UNITED STATES**
**WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Matt J. Gardner, Assistant United States Attorney, and in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, files this Position of the United States with Respect to Sentencing in the instant case.  The United States asks the Court to impose a sentence at the low end of the properly calculated Sentencing Guidelines range.  Such a sentence appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

**BACKGROUND**

On March 4, 2013, an HSI Special Agent, acting in an undercover capacity, identified an IP address on the eMule network with suspect child pornography files available for sharing.  The eMule network is one of several peer-to-Peer file sharing (P2P) networks currently operating on the Internet.  The IP address, identified as 108.28.240.109, was logged by law enforcement software as having approximately 185 child pornography files available for sharing on March 4, 2013.  On March 6, 2013, the HSI Special Agent established a direct connection with the IP

1

address and downloaded a partial suspect child pornography video file. The Agent reviewed the file and determined that it depicted child pornography.

The Special Agent then sent an administrative subpoena to Verizon FIOS ("Verizon"), which provided records that showed that between July 20, 2012 and March 14, 2013, the IP address was continuously assigned to Mr. Schnittker's wife at their address in Sterling, Virginia. Based on the above information, a federal search warrant was issued for their residence in Sterling. HSI Agents and other law enforcement officers executed the search warrant on November 7, 2013.

At the time of the search warrant, Schnittker was home with his adult daughter. While Schnittker and his daughter were discussing the search warrant aloud in the dining room, HSI agents overheard Schnittker mention that he downloaded batches of files from a peer-to-peer file-sharing application called eMule. Schnittker stated he downloaded the files from his desktop computer in the basement.

Agents seized numerous electronic media, including a generic desktop computer and two hard drives, a Maxtor and a Western Digital, from the basement. In addition, agents seized dozens of DVDs from throughout the house. Agents also seized two child pornography magazines that were located under Schnittker's bed.

Forensic analysis conducted on the computer media revealed that the Generic Computer was used to search for and download child pornography using eMule. The child pornography was then downloaded to the Western Digital and Maxtor hard drives. The file structure of the two hard drives was highly detailed, showing that Schnittker carefully collected and sorted pornography, both adult and child, for many years. Much of the child pornography was stored in

folders labeled with terms indicative of child pornography, such as "pthc," "lsm," and "dek xxx." In total, the forensic examination showed that Schnittker had collected over 18,000 images and 190 videos depicting child pornography. Dozens of the videos featured children as young as 5 years old being raped and sexually exploited. Numerous other videos and images featured children under 12 years old who were bound with duct tape or ropes and raped and sexually exploited. In addition, many of the DVDs recovered throughout Schnittker's house contained images and videos of child pornography.

On March 6, 2014, a grand jury indicted Schnittker for one count of receipt of child pornography in violation of 18 U.S.C. 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. 2252(a)(4). On April 17, 2014, Schnittker pleaded guilty to count two, possession of the child pornography on the Western Digital hard drive, without a plea agreement. On June 30, 2014, Schnittker went to trial on count one, receipt of child pornography. On August 19, 2014, the Court found Schnittker guilty of receipt of the child pornography on the Maxtor hard drive.

Under the Sentencing Guidelines § 2G2.2, the defendant's base offense level is 22. The offense level is decreased by two levels pursuant to § 2G2.2(b)(1) because the defendant's conduct was limited to receipt of child pornography, and the defendant did not intend to traffic in or distribute the material. The offense level is increased by 2 levels pursuant to § 2G2.2(b)(2) because the material involved a prepubescent minor or a minor who had not attained the age of 12 years; the offense level is increased by 2 levels pursuant to § 2G2.2(b)(6) because the defendant's conduct involved the use of a computer; the offense level is increased by 4 levels pursuant to § 2G2.2(b)(4) because the images depicted sadistic conduct; and the offense level is

increased by 5 levels pursuant to § 2G2.2(b)(7)(D) because the defendant possessed the equivalent of more than 600 images of child pornography. The resulting adjusted offense level is 33.

The government does not recommend a decrease for acceptance of responsibility for receipt of child pornography. Schnittker admitted to knowingly possessing the child pornography on the Western Digital hard drive,[1] but he did not admit that he knowingly received these images. In fact, he went to trial on this factual issue and argued that the government failed to prove that he knowingly received the images. See United States v. Moore, 571 Fed Appx. 172 (2014 4th Cir.) (unpublished). In Moore, the defendant pleaded guilty to being a felon in possession of a firearm, but went to trial on the offense of carjacking. Id. As he denied essential elements of the carjacking offense at trial, he was not entitled to a two-level reduction for acceptance of responsibility. Id. As in Moore, Schnittker has never admitted an essential element of the crime (knowing receipt), and he is not entitled to acceptance of responsibility.

The statuary penalties are a mandatory minimum term of 5 years imprisonment with a maximum term of 20 years imprisonment, a maximum fine of $250,000, a special assessment of $100, restitution, and 5 years to life of supervised release. The defendant is in Criminal History Category I, based on the defendant's lack of criminal history as outlined in the Pre-Sentence Report. As a result, the advisory guideline range is 135 to 168 months in custody.

## ARGUMENT

---

[1] For Count Two the government agrees that Schnittker is entitled to a two-point decrease for acceptance of responsibility. However, the guidelines for Count Two group under USSG 3D1.2 and under USSG 3D1.3, his offense level is determined by the guidelines for Count One, which has the highest offense level.

4

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." *See also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B); *Biheiri*, 356 F.Supp.2d at 594.

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the

5

public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The nature of circumstances of the offense are serious. Receiving and possessing child pornography causes grave harm to the children depicted in the images. The harm to children depicted in child pornography was recognized years ago by the United States Supreme Court in New York v. Ferber, 458 U.S. 747, 758 (1982). In Ferber, the Supreme Court noted that, in the judgment of state and federal legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." Ferber, 458 U.S. at 758 (citations omitted). The Ferber court also observed that the "[pornographic] materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." Id. at 759 (citation omitted). Furthermore, the court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography… It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

Id at 759 & n. 10 (citations omitted). See also Osborne v. Ohio, 495 U.S. 103, 109-10 (1990) (reaffirming Ferber in case involving possession of child pornography).

In 2002, the United States Supreme Court again acknowledged the harm to victims depicted in child pornography and observed that a new harm is caused each time the images are shared with someone different. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249

(2002). In Free Speech Coalition, the court noted that "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." Id at 249.

Moreover, in rejecting defendants' claims that the "mere" receipt or possession of child pornography is a victimless crime, courts have noted at least three specific harms inflicted on the children depicted in the pornographic images:

> First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization.
>
> Second, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.
>
> Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials…[T]here is no sense in distinguishing, as [Defendant] has done, between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

United States v. Norris, 159 F.3d 926, 929-30 (5th Cir. 1998).

Based upon Supreme Court precedent and Congressional findings, there is no question that collecting child pornography images is a serious crime. Schnittker is typical of the type of offender that Congress was concerned about when it enacted significant penalties for collecting child pornography. Schnittker's conduct was repeated: he intentionally downloaded child pornography over a period of years. This was not an accident, a mistake, or a crime that occurred from a momentary lapse of judgment. In addition, Schnittker collected a large number of images and videos depicting the sexual exploitation of children. Schnittker's collection of child pornography included over 18,000 images and 190 videos of children being sexually abused. Of particular concern is the extensive and methodical folder structure Schnittker used to categorize the images and videos he collected. In addition, he had child pornography throughout his house, in magazines, DVDs, and the computer media. Without question, collecting images and videos of children being exploited was a significant part of Schnittker's life. The repeated nature of Schnittker's conduct and the extent of his collection of images of children being sexually abused justify a significant sentence in this case.

## CONCLUSION

Therefore, for the above-stated reasons, the United States submits that a sentence at the low end of the Guideline Range, followed by five years of supervised release is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

DANA J. BOENTE
United States Attorney

By:    /s/_____
Matt J. Gardner
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3824
Fax: 703-299-3981
Email Address: matthew.gardner@usdoj.gov

CERTIFICATE OF SERVICE

       I hereby certify that on the 18th day of November 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF), and a copy has been sent via electronic mail to the following:

John Zwerling, Esq.
Cary Citronberg, Esq.
114 North Alfred Street
Alexandria, VA 22314
(703) 684-8000
jz@zwerling.com


Jennifer Lyerly
U.S. Probation Officer
401 Courthouse Square
Alexandria, Virginia 22314
Jennifer_lyerly@vaep.uscourts.gov


                                                /s/
                                    Matt J. Gardner
                                    Assistant United States Attorney
                                    Attorney for the United States of America
                                    United States Attorney's Office
                                    Justin W. Williams U.S. Attorney's Building
                                    2100 Jamieson Avenue
                                    Alexandria, Virginia 22314
                                    Phone:  703-299-3824
                                    Fax: 703-299-3981
                                    Email Address: matthew.gardner@usdoj.gov